IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BAY POINT HIGH AND DRY, INC.** | § | **PLAINTIFF/COUNTER-DEFENDANT** |
| | § | |
| v. | § | **CIVIL ACTION NO. 1:06CV178-LG-JMR** |
| | § | |
| **SUSAN GORE BRENNAN, AS** | § | |
| **EXECUTRIX OF THE SUCCESSION OF** | § | |
| **KATHRYN B. GORE; NANCY L. RICE,** | § | |
| **INDIVIDUALLY; AND JOHN RICE, AS** | § | |
| **EXECUTOR OF THE ESTATE OF** | § | |
| **ATWOOD L. RICE, JR.** | § | **DEFENDANTS/COUNTER-PLAINTIFFS** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER IS BEFORE THE COURT** on the Motion for Summary Judgment [67] filed by Defendants/Counter-plaintiffs, Susan Gore Brennan, as Executrix of the Succession of Kathryn B. Gore, Nancy L. Rice, Individually, and John Rice, as Executor of the Estate of Atwood L. Rice, Jr. ("Lessors"). Plaintiff /Counter-defendant, Bay Point High and Dry ("Lessee") has responded, and Lessors have replied. Upon reviewing the submissions of the parties and the relevant law, the Court finds that Lessors' Motion should be granted in part and denied in part.

**FACTS**

On April 17, 1995, the parties entered a lease agreement in which Lessors agreed to lease property in Biloxi, Mississippi, to Lessee. The property contained a 20,000 foot boat storage facility and a shipyard. The storage building was destroyed by Hurricane Katrina, leaving only a damaged foundation. The parties disagree over whether the lease was canceled due to the destruction of the storage building, whether the storage building should be rebuilt, which party should rebuild the building, and which party is entitled to the proceeds of an insurance policy

procured on the building.[1]  Lessee filed a Complaint for Declaratory Judgment, requesting the following:

> 1. That the Court enter a Declaratory Judgment declaring that the lease between the parties enforceable, that the Lessors are in breach of said Lease; the Lease should remain in full force and effect, the property should be repaired by the lessor, and the Lessee should remain in possession;
> 2. That the Court require that an audit be performed which calculates the amount of rent which is currently due and the amount of rent which is abated pursuant to the terms of the Lease;
> 3. That the Court impose a lien for all damages at issue in this matter on the Premises; and
> 4. That the Court enter a Judgment for all costs of this cause and all other general relief to which Plaintiff may be entitled and as this Court may grant in the premises.

(2d Am. Compl. at 5).  Lessors filed a Counterclaim demanding that Lessee turn over the insurance proceeds received pursuant to an insurance policy procured on the property. (Countercl. at 12).

## DISCUSSION

Lessors have filed a Motion for Summary Judgment, arguing that the lease agreement was canceled pursuant to the following clause in the lease:

> If through no fault, neglect, or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be cancelled.  If, however, the premises can be repaired within 180 days from date of fire or casualty, then this lease shall not be cancelled, and Lessor shall notify Lessee within 30 days from date of fire or casualty that [L]essor will repair the damage, and Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate.

(Ex. A to Defs.' Mot. at 147-152).  Lessee argues that the lease was not cancelled by this clause because the building could be repaired with 180 days.  However, Lessors assert that the clause

---

[1]The insurance policy proceeds were deposited with the Court.

provides for automatic cancellation of the lease upon the building's destruction, regardless of whether the building can be repaired within 180 days. Alternatively, Lessors argue: "Even if the building could be returned to its original state within that limited timeframe [sic], it would still constitute a rebuilding effort, not a repair." (Defs. Mem. at 3). Thus, Lessors contend that only repair, not rebuilding of the structure is required.

The parties do not dispute that Mississippi law applies to the lease at issue. The clause, which has never been interpreted under Mississippi law, is contained in the standard New Orleans Real Estate Board commercial lease form. *See Howard Motors, Inc. v. Beeson*, 453 So. 2d 652, 654 (La. Ct. App. 1984). The Louisiana courts have held that the clause is "for the primary benefit of the owner permitting him to avoid cancellation of the lease." *Degrey v. Fox*, 205 So. 2d 849, 851-52 (La. Ct. App. 1968); *Beeson*, 453 So. 2d at 654. In *Beeson*, the Court explained: "Once the fire rendered the building unfit for occupancy, by complying with the notice and construction period stated in the lease, the lessor could, but was not obligated to repair the building." *Id.* at 654. Therefore, the Court in *Beeson* held that the lessor's refusal to repair the property did not constitute an anticipatory breach of the contract, regardless of whether repairs could be made within the period specified in the lease. *Id.* at 655.

The Mississippi courts have explained the process of interpreting a contract as follows:

> Our law requires this Court to accept the plain meaning of a contract as the intent of the parties where no ambiguity exists. In other words, legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. In applying the "four corners" test, our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. In short, this Court will not rewrite or

deem a contract ambiguous where the language is clear and indicative of its contents.

*A&F Properties, Inc. v. Madison County Bd. of Supervisors*, 933 So. 2d 296, 301 (¶12) (Miss. 2006)(internal quotations and citations omitted). If contract language is susceptible to two or more reasonable interpretations, then ambiguity is present. *Miss. Farm Bureau Cas. Ins. v. Britt*, 826 So. 2d 1261, 1265 (¶14) (Miss. 2002). An ambiguity in a contract may also arise from words which are uncertain when applied to the subject matter of the contract. *Wicker v. Harvey*, 937 So. 2d 983, 991 (¶22) (Miss. Ct. App. 2006). Ambiguities are construed against the drafter of the contract. *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990)

Lessee has testified that only the foundation of the storage building remained after Hurricane Katrina made landfall. Lessee has also submitted expert testimony that the building could have been rebuilt within 180 days after it was destroyed. Lessors, however, argue that requiring them to rebuild the structure impermissibly stretches the contract language beyond its plain language. Lessee does not respond to this argument, but makes a similar argument in response to Lessors' assertion that the contract required Lessee to repair or rebuild the structure.[2]

The pertinent question before the Court is whether Lessee's interpretation of the contract– that the lease is cancelled only if the entire premises *cannot be rebuilt in 180 days*– is reasonable. The Court finds that the plain meaning of the clause only contemplates *repair*, not rebuilding of the entire structure, within 180 days. If Lessee's argument that the entire structure could have been rebuilt in 180 days is correct, then there would be no circumstances in which the premises

---

[2]: "[E]ven if the building was totally destroyed, the obligation of a lessee will not be extended beyond the plain meaning of the language used in the lease, and if there is not an express stipulation requiring the lessee to rebuild the property destroyed without fault, the loss will fall on the landlord." (Pl.'s Mem. at 15).

was incapable of repair in 180 days, and there would be no need for the parties to have included the following language in the clause: "If through no fault, neglect, or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be cancelled." Lessee's contention is unreasonable and represents a strained interpretation of the clause. Here, the building was totally destroyed. As a result, the Court finds that the lease between the parties was automatically cancelled upon the total destruction of the building by Hurricane Katrina.

However, the Court finds that genuine issues of material fact exist regarding whether Lessors are entitled to the proceeds of the insurance policy that was obtained on the premises by Lessee. The lease provides: "Windstorm and hail insurance to be carried in the amount of $180,000 <u>on building</u>." The lease also provides: "Despite anything spelled out above, this lease is a net, net, net lease, with lessee responsible for reimbursing lessor for all taxes, insurance, repairs to roof or any repairs which might develop as a result of lessee operations." (Ex. A to Defs.' Mot.) It is undisputed that Lessee obtained the insurance policy and has paid the premiums. The lease is silent as to which party is entitled to the proceeds of the policy obtained on the property. Generally, "[i]n the absence of any agreement to the contrary, the proceeds of insurance obtained by either the lessor of the lessee . . . cannot be claimed, in whole or in part, by the other, even though the policy covers the value of the interests of both in the property." *Middleton v. Rush*, 764 So. 2d 1276 (Ala. Civ. App. 2000) (quoting 5 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* §68:35 (3d ed. 1995 & 1999 Supp.)); *see also Yoshida v. Security Ins. Co.*, 26 P.2d 1082, 1086 (Or. 1933). Unfortunately, the parties have not provided a copy of the insurance policy to the Court. In the absence of any guidance from the insurance

policy as to which party is entitled to the proceeds of the policy, this Court find as a matter of law that either party should receive the insurance proceeds. Therefore, Lessors are not entitled to summary judgment on their counterclaim for payment of the insurance policy proceeds.

## CONCLUSION

The Court finds that the lease between the parties was automatically cancelled upon the total destruction of the building by Hurricane Katrina. Therefore, Lessors are entitled to summary judgment regarding Lessee's claims. However, genuine issues of material fact exist regarding whether Lessors are entitled to the proceeds of the insurance policy obtained on the property.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Lessors' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Lessee's Complaint for Declaratory Judgment is **DISMISSED WITH PREJUDICE**, and Lessors' Counterclaim shall remain pending.

**SO ORDERED AND ADJUDGED** this the 3rd day of October, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE